**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| MARTI ANNE OAKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     1:17CV134 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Marti Anne Oakes, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 19; see also Docket Entry 14 (Plaintiff's Brief), Docket Entry 20 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of April 30, 2007. (Tr. 243-44.)[1] Upon denial of those applications initially (Tr. 81-112, 145-73) and on reconsideration (Tr. 113-42, 175-92), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 193-94). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 40-76.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 20-33.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 18-19, 334-35), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2012.

2. [Plaintiff] has not engaged in substantial gainful activity since April 30, 2007, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: carpal tunnel syndrome (CTS) and cerv[ic]algia and other arth[r]algias.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

---

[1] The record does not contain Plaintiff's application for SSI.

the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5.    .   .   . [Plaintiff] has the residual functional
capacity to perform light work . . . except [she] can
push and pull the same amount as lift and carry.  She can
frequently handle, finger and feel bilaterally.  She can
never climb ladders, ropes and scaffolds, never crawl,
never be exposed to unprotected heights and never be
exposed to extreme heat or cold.  She can occasionally
use ramps and stairs, balance, stoop, kneel and crouch.
She can only occasionally operate a motor vehicle and
only occasionally be exposed to pulmonary irritants.

. . .

6.    [Plaintiff] has no past relevant work.

. . .

10.  Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [she] can perform.

. . .

11.  [Plaintiff] has not been under a disability, as
defined in the . . . Act, from April 30, 2007, through
the date of this decision.

(Tr.  25-32  (bold  font  and  internal  parenthetical  citations

omitted).)[2]

---

[2] Both at the hearing (see Tr. 46-48, 73), and on a post-hearing form (see Tr.
265), Plaintiff indicated her intent to amend her alleged onset date to her date
last insured for DIB, June 30, 2012 (see Tr. 23, 25).  However, the ALJ decided
the issue of disability for the period from April 30, 2007, Plaintiff's original
alleged onset date, through September 2, 2016, the date of the ALJ's decision.
(See Tr. 32.)   The ALJ's error in that regard remains harmless under the
circumstances presented here, because a finding that Plaintiff did not qualify
as disabled from April 30, 2007, to September 2, 2016, necessarily encompasses
a determination that Plaintiff did not so qualify from June 30, 2012, to
September 2, 2016.

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

(quoting 42 U.S.C. § 423(d)(1)(A)).[3]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is

---

[3]  The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed.  [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

### B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred in failing to consider whether Plaintiff met Listing 14.09A2 [(Inflammatory Arthritis)]" (Docket Entry 14 at 5 (bold font omitted));[7]

2) "[t]he RFC determination is not supported by substantial evidence because the ALJ failed to follow the treating physician rule and give more weight to Plaintiff's treating physicians over the non-examining state agency medical consultant" (<u>id.</u> at 8 (bold font omitted)); and

3) "[t]he credibility determination is not supported by substantial evidence" (<u>id.</u> at 14 (bold font omitted)).

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[7] Pin citations refer to the page number appended to the bottom of each page upon filing in the CM/ECF system.

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 20 at 4-12.)

## 1. Listing 14.09A2

In Plaintiff's first issue on review, she faults the ALJ for "failing to consider whether [Plaintiff] met Listing 14.09A2 [(Inflammatory Arthritis)]." (Docket Entry 14 at 5 (bold font omitted).) In particular, Plaintiff contends that the evidence shows that "Plaintiff has persistent deformity of one or more joints in each upper extremity" (id. at 6 (citing Tr. 729, 885, 935, 936, 939, 1029, 1030)), and "has an inability to perform fine and gross movements effectively" (id. at 7 (citing Tr. 59, 61, 62, 282, 283, 285, 293-94, 729, 793, 910, 938)), as required by Listing 14.09A2, see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.09A2. According to Plaintiff, "[w]ithout a proper analysis explaining why the ALJ rejected this evidence, the Court cannot determine if his finding that Plaintiff does not meet a Listing is supported by substantial evidence." (Docket Entry 14 at 8 (citing Smith v. Colvin, No. 4:15-CV-000175-RN, 2017 WL 27942, at *5 (E.D.N.C. Jan. 3, 2017) (unpublished)).) Plaintiff's arguments fall short.

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th

Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify.").

An ALJ must identify the relevant listed impairments and compare them to a claimant's symptoms only where "there is ample evidence in the record to support a determination that [the claimant's impairment] met or equalled [sic] one of the [ ] impairments listed in Appendix 1 . . . ." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986) (emphasis added); see also Russell v. Chater, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("Cook . . . does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases."); Ollice v. Colvin, No.

1:15CV927, 2016 WL 7046807, at *3 (M.D.N.C. Dec. 2, 2016) (unpublished) (Peake, M.J.) ("[A]n ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination where the 'medical record includes a <u>fair amount of evidence</u>' that a claimant's impairment meets a disability listing." (emphasis added) (quoting <u>Radford</u>, 734 F.3d at 295)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Jan. 10, 2017) (Osteen, Jr., C.J.).

Listing 14.09A2 requires proof of "[i]nflammatory arthritis . . . [w]ith[] [p]ersistent inflammation or persistent deformity of . . . [o]ne or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively, as defined in [Section] 14.00C7." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.09A2 (italics omitted and emphasis added).[8] "Inability to perform fine and gross movements effectively means an <u>extreme</u> loss of function of both upper extremities; i.e., an impairment(s) that interferes <u>very seriously</u> with the individual's ability to initiate, sustain, or complete activities." <u>Id.</u>, § 1.00B2c (emphasis added).

In this case, the ALJ evaluated Plaintiff's arthralgias under Listing 1.02 (Major Dysfunction of a Joint) (<u>see</u> Tr. 26

---

[8] In turn, Section 14.00C7 provides that the "[i]nability to perform fine and gross movements effectively has the same meaning as in [Section] 1.00B2c." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 14.00C7 (italics omitted).

(referencing 20 C.F.R., Pt. 404, Subpt. P., App'x 1, § 1.02)), and Plaintiff's ulcerative colitis under Listing 5.06 (Inflammatory Bowel Disease) (see Tr. 26-27 (referencing 20 C.F.R., Pt. 404, Subpt. P., App'x 1, § 5.06)), and found that Plaintiff's signs and symptoms did not meet the requirements of either listing (see id.). In considering Listing 1.02, which contains the same requirement regarding an inability to perform fine and gross movements effectively as Listing 14.09A2, the ALJ found that "the evidence d[id] not demonstrate that [Plaintiff] ha[d] the degree of difficulty in performing fine and gross movements as defined in [Section] 1.00B2c." (Tr. 26.) The ALJ did not expressly consider Listing 14.09A2. (See Tr. 26-27.)

Plaintiff has not established grounds for reversal or remand, because the evidence upon which she relies shows neither that "ample evidence" existed that her impairment met or medically equaled Listing 14.09A2, Cook, 783 F.2d at 1172, nor that remand for an express discussion of Listing 14.09A2 by the ALJ would lead to a different outcome in her case, Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Significantly, Plaintiff has not shown that she suffered from inflammatory arthritis, as required by Listing 14.09A2, see 20

12

C.F.R., Pt. 404, Subpt. P., App'x 1, § 14.09.A2.  Plaintiff argues
that, "[a]t the hearing, Plaintiff testified that her doctor told
her <u>some people</u> with ulcerative colitis also have <u>problems with
their joints</u>, which <u>suggests</u> that her hand pain and joint problems
are inflammatory arthritis due to her ulcerative colitis." (Docket
Entry 14 at 4 (emphasis added) (citing Tr. 60).)[9]  In fact,
Plaintiff testified as follows about a possible connection between
her ulcerative colitis and her joint pain:

> Attorney:     So what are they telling you is wrong
>               with your hands?
>
> Plaintiff:    I believe they call it <u>arthropathy</u>.  And
>               she said it's the people who have
>               ulcerative colitis, 30% of people who
>               have [ulcerative colitis] will get – the
>               colitis will travel outside of the
>               digestive tract and into their joints and
>               the bones, and that's where I come in.
>               It's gone into – the ulcerative colitis
>               has gone outside and traveled into –
>
>               . . .
>
>               – [my] knees, and hands, and back, and
>               stuff.

(Tr. 60 (emphasis added).)    Thus, Plaintiff's testimony
establishes, at most, that an unidentified doctor informed her on
an unknown date that her ulcerative colitis had caused <u>arthropathy</u>,

---

[9] Plaintiff also maintains that "[t]he consultative examiner [Dr. Romeo B.
Atienza] determined that Plaintiff's] hand arthralgia was <u>steroid-induced</u>
arthritis." (<u>Id.</u> (citing Tr. 732) (emphasis added).)  Plaintiff does not explain
how Dr. Atienza's finding of "<u>steroid-induced</u> arthritis" (Tr. 732 (emphasis
added)) demonstrates that Plaintiff suffered from <u>inflammatory</u> arthritis.  (<u>See</u>
Docket Entry 14 at 5-8.)

not inflammatory arthritis, in her knees, hands, and back. (See id.)

Moreover, neither of Plaintiff's treating specialists diagnosed her with inflammatory arthritis. Plaintiff's treating orthopedist, Dr. Mark Brenner, diagnosed Plaintiff with carpal tunnel syndrome, DeQuervain's tenosynovitis, and knee pain (see Tr. 878, 888, 922), and Plaintiff's blood tested negative for rheumatoid arthritis (see Tr. 880). Similarly, Plaintiff's treating rheumatologist, Dr. Gwenesta B. Melton, diagnosed Plaintiff with "unspecified arthropathy" (Tr. 968; see also Tr. 936 (diagnosing unspecified arthropathy at multiple sites)), and tests reflected negative results for signs of arthritis (see Tr. 940 (documenting Plaintiff's negative laboratory test for rheumatoid arthritis), 953 (7/1/15 xray of wrists showing "[n]o radiographic features of arthritis"), 954 (7/1/15 xray of knees recording "[n]o radiographic features of arthritis"), 963 (7/28/15 xray of lumbar spine and pelvis reflecting no acute fracture or dislocation and "[n]o significant degenerative changes").

Furthermore, all other xrays of record showed no evidence of arthritis in Plaintiff's hands, knees, spine, or pelvis. (See Tr. 807 (5/24/13 xray of cervical spine reporting no fracture or subluxation, well-preserved disc spaces, no facet hypertrophy, and no significant disc disease), 808 (1/11/13 xray of hands reflecting no significant degenerative changes), 810 (1/11/13 xray of knees

demonstrating no significant degenerative changes), 868 (11/26/13 xray of knees indicating no fracture or effusion, well-maintained joint spaces, and no hypertrophic spurring), 869 (11/26/13 xray of hands showing no fracture or dislocation, normal bone mineral density, preserved joint spaces, no erosive changes, and no significant degenerative changes).

Even assuming the record sufficiently established an inflammatory arthritis diagnosis, Plaintiff cannot meet Listing 14.09A2's specific requirements.[10] Plaintiff first maintains that the evidence shows "persistent deformity of one or more <u>joints</u> in each upper extremity," and points to Dr. Melton's documentation of deformity in Plaintiff's proximal interphalangeal ("PIP"), distal interphalangeal ("DIP"), and metacarpophalangeal ("MCP") joints over a 9-month period in 2015 and 2016. (Docket Entry 14 at 6 (emphasis added) (citing Tr. 935, 936, 939, 1029, 1030).) However, Listing 14.09A2 requires "[p]ersistent deformity of . . . [o]ne or more <u>major peripheral joints</u> in each upper extremity." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.09A2 (italics omitted and emphasis added). "[M]ajor peripheral joints" of the upper extremity include the "shoulder, elbow, [and] wrist-hand . . ., <u>as opposed to the other peripheral joints (e.g., the joints of the hand)</u>." <u>Id.</u>,

---

[10] Plaintiff made no argument that her joint impairment medically equaled Listing 14.09A2. (<u>See</u> Docket Entry 14 at 5-8.)

§ 1.00F (emphasis added).[11]   Thus, Dr. Melton's findings of deformity in Plaintiff's _finger_ joints do not demonstrate deformity of "major peripheral joints," i.e., Plaintiff's wrist-hand joints.[12]

Plaintiff also argues that "[t]he evidence suggests Plaintiff has an inability to perform fine and gross movements effectively." (Docket Entry 14 at 7.)  However, Plaintiff relies primarily on her own _subjective_ reports of difficulty performing such movements (_see id._ (citing Tr. 59, 61, 62, 282, 283, 286, 729, 793, 938)), and the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record." (Tr. 28.)  For the reasons explained more fully below in connection with Plaintiff's third assignment of error, the ALJ supported his analysis of Plaintiff's credibility with substantial evidence.  Similarly, Plaintiff points to "a third party function report completed on January 27, 2014, [on which] Edward Oakes

---

[11] "The wrist and hand are considered together as one major joint . . . ."  20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.00F.

[12] Plaintiff also relies on Dr. Atienza's October 13, 2009, finding of swelling in Plaintiff's PIP joints, and Dr. Brenner's January 13, 2015, finding of "very subtle swelling involving both [of Plaintiff's] hands" to support her argument that she demonstrated the "persistent deformity" required by Listing 14.09A2. (Docket Entry 14 at 6 (citing Tr. 729, 885).)  As an initial matter, findings of swelling do not demonstrate _deformity_ of the joints, but rather inflammation. In any event, Plaintiff still cannot show "persistent inflammation" of "[o]ne or more _major peripheral joints_ in each upper extremity," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.09A2 (italics omitted and emphasis added).  Dr. Atienza's finding of PIP joint swelling does not involve a "major peripheral joint." (_See_ Tr. 729.)  Moreover, although Dr. Brenner did not indicate the specific location of Plaintiff's "very subtle" hand swelling (_see_ Tr. 885), even if that swelling occurred in Plaintiff's wrist-hand joint, such an isolated finding would not qualify as "_persistent_ inflammation."

reported that [Plaintiff] could hardly hold a book to read and her hands were weak, so she would not hold on to things or open them." (Docket Entry 14 at 8 (citing Tr. 293-94).)[13] However, the ALJ declined to give significant weight to Mr. Oakes' statements (see Tr. 30-31), and Plaintiff did not challenge the ALJ's decision in that regard (see Docket Entry 14).

Lastly, Plaintiff maintains that, "[o]n August 1, 2014, physical therapist Kelly Tolentino noted Plaintiff had functional limitations gripping and writing." (Id. at 7 (citing Tr. 910).) However, Ms. Tolentino's notation of functional limitations in gripping and writing appears in a portion of the treatment record containing Plaintiff's subjective complaints, such as her estimated pain level, type of pain, as well as aggravating and alleviating factors. (See Tr. 910.) That treatment record later reflects that Ms. Tolentino "deferred" a grip strength test, and does not reflect that she gauged Plaintiff's writing ability. (Tr. 912.) In any event, Ms. Tolentino treated Plaintiff approximately one month after a motor vehicle accident in which Plaintiff dislocated her right middle finger and injured her right shoulder. (See Tr. 901, 910.) A follow-up note on August 7, 2014, noted that physical therapy on Plaintiff's right middle finger and shoulder "helped," and that Plaintiff did not have "much pain" at that point. (Tr. 901.)

---

[13] The record does not clarify the relationship between Edward Oakes and Plaintiff. (See Tr. 289-86.)

In contrast to Plaintiff's largely subjective evidence, the ALJ noted Dr. Atienza's findings that Plaintiff "was able to make a fist with minimal discomfort[,] . . . her grip/pinch were strong bilaterally[,] [and] [s]he had no trouble picking up, g[r]asping, or manipulating small/large objects." (Tr. 29 (referencing Tr. 731).) Substantial evidence thus supports the ALJ's determination that "the evidence d[id] not demonstrate that [Plaintiff] ha[d] the degree of difficulty in performing fine and gross movements as defined in [Section] 1.00B2c." (Tr. 26.)

Under such circumstances, Plaintiff has shown neither that the record contains "ample evidence" that her joint symptoms met or medically equaled Listing 14.09A2, Cook, 783 F.2d at 1172, nor that a remand for an express discussion of Listing 14.09A2 by the ALJ would lead to a different outcome in her case, see Gower v. Commissioner of Soc. Sec., Civ. No. 13-14511, 2015 WL 163830, at *29 (E.D. Mich. Jan. 13, 2015) (unpublished) (finding step three remand not justified where "[a]ny further discussion [by the ALJ at step 3] would simply expound upon the absence of evidence"); see also Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

In sum, Plaintiff's first assignment of error fails to entitle her to relief.

## 2. Treating Physician Rule

Plaintiff next maintains that "[t]he RFC determination is not supported by substantial evidence because the ALJ failed to follow the treating physician rule and give more weight to Plaintiff's treating physicians over the non-examining state agency medical consultant." (Docket Entry 14 at 8 (bold font omitted).)[14] In particular, Plaintiff argues that "[t]he reasons provided by the ALJ for the weight he gave to . . . opinions [from treating sources Drs. Brenner and Melton] do not provide a sufficient analysis to enable the Court to review [the ALJ's] determination." (Id. at 11 (citing Fox v. Colvin, 632 F. App'x 750, 756 (4th Cir. 2015), and Monroe v. Colvin, 826 F.3d 176, 191 (4th Cir. 2016)).) According to Plaintiff, "[t]he ALJ's rejection of Dr. Brenner's and Dr. Melton's opined limitations was harmful," because "a limitation . . . to allow Plaintiff the option to change positions every thirty minutes . . . [would render Plaintiff] unable to perform any of the jobs provided by the [VE] and relied on by the ALJ[,] [and] [t]here is no evidence to support a finding that Plaintiff could perform any jobs if she were limited to less than occasional

---

[14] Plaintiff did not make any further argument that the ALJ erred by according more weight to the opinions of the non-examining state agency medical consultant than to those of Plaintiff's treating physicians, focusing instead on challenging the ALJ's grounds for discounting the opinions of Plaintiff's treating physicians. (See Docket Entry 14 at 8-14.) Accordingly, Plaintiff has waived that aspect of her argument. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

reaching, handling, and fingering." (Id. at 14 (citing Tr. 72).)

Plaintiff's contentions miss the mark.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." <u>Craig</u>, 76 F.3d at 590 (emphasis added).

a. Dr. Brenner

In this case, on February 4, 2015, Dr. Brenner completed an RFC Questionnaire (Tr. 878-79), reporting Plaintiff's diagnoses as DeQuervain's tenosynovitis and carpal tunnel syndrome which caused symptoms of numbness in Plaintiff's right hand (<u>see</u> Tr. 878). However, Dr. Brenner also noted that Plaintiff's symptoms "[s]eldom" would rate as "severe enough to interfere with the attention and concentration required to perform simple work-related tasks," and that Plaintiff's prognosis remained "good." (<u>Id.</u>) Dr. Brenner declined to evaluate Plaintiff's abilities to sit, stand, and walk in the absence of a functional capacities evaluation, but did indicate that Plaintiff needed a job which permitted her to change position from sitting, standing, or walking at will. (<u>Id.</u>) Ultimately, Dr. Brenner opined that Plaintiff could not lift or carry any weight frequently and up to ten pounds occasionally, and could only perform handling, fingering, and reaching for two percent (or less than 10 minutes) of an 8-hour workday. (Tr. 879.)

The ALJ detailed the findings in Dr. Brenner's treatment notes (<u>see</u> Tr. 29) and then assessed his opinions as follows:

> Dr. Brenner, a treating physician, opined that [Plaintiff] can occasionally lift and carry 10 pounds, and can use her bilateral arms, hands, and fingers two percent of the workday. I give Dr. Brenner's opinions little weight, as the evaluation being [sic] incomplete

and conclusory. His opinion noted need for further functional capacity evaluation.

(Tr. 30.) The ALJ did not reversibly err in his evaluation of Dr. Brenner's opinions.

Plaintiff challenges the ALJ's rejection of Dr. Brenner's opinions as "incomplete" (Docket Entry 14 at 11 (citing Tr. 30), arguing "that Dr. Brenner['s] refus[al] to opine limitations about an impairment he did not treat and knew nothing about should not mean his opinion is not entitled to weight, but instead that it is entitled to more weight" (id. at 12). Plaintiff's argument does not clarify which "impairment" Dr. Brenner "did not treat and knew nothing about." (Id.) If Plaintiff meant to suggest that Dr. Brenner treated only Plaintiff's wrist and hand problems and, thus, could not offer opinions regarding Plaintiff's abilities to sit, stand, or walk, Plaintiff overlooks her first visit with Dr. Brenner on May 26, 2014. (See Tr. 921-23.) On that date, Plaintiff complained of pain in her hands and knees for years, and reported that she had trouble bending her knees. (See Tr. 921.) Dr. Brenner ordered a knee x-ray which showed mild degenerative changes (see Tr. 922, 923), diagnosed Plaintiff with pain in her knee joints (see Tr. 922), and prescribed anti-inflammatory medication and home exercises (see Tr. 923). Moreover, Dr. Brenner failed to answer questions regarding side effects from Plaintiff's medications (see Tr. 878), whether Plaintiff would need unscheduled breaks (see id.), how often Plaintiff would miss work due to her

22

impairments (see Tr. 879), and whether Plaintiff could perform full-time work on a sustained basis (see id.), questions which do not depend on the type of impairment that Dr. Brenner treated.

In any event, Plaintiff offers no authority for the proposition that an ALJ may not discount a treating source's report on the basis, even in part, of incompleteness (see Docket Entry 14 at 11-12).[15] Authority to the contrary ,however, abounds. See Walde v. Apfel, No. 00-1442, 242 F.3d 378 (table), 2000 WL 1705022, at *1 (8th Cir. Nov. 15, 2000) (unpublished) (affirming ALJ's discrediting of treating physician's "physical-RFC findings" because, inter alia, such findings "were incomplete"); Wilson v. Berryhill, No. 3:16CV1771, 2017 WL 2720344, at *11 (N.D. Ohio June 23, 2017) (unpublished) (discerning no error in ALJ's decision to discount treating physician's opinion on check-box form, because, in part, "any limits concerning [the p]laintiff's ability to stand/walk or sit were left blank").

Plaintiff also faults the ALJ for discounting Dr. Brenner's opinions as conclusory. (See Docket Entry 14 at 12-13 (citing Tr. 30).) That argument fails, because Dr. Brenner did not provide any

---

[15] Plaintiff maintains that Dr. Brenner's "failure to answer every question on a pre-printed form is not a legitimate basis to reject his opinion, as it is neither contradictory evidence nor one of the factor's [sic] to be considered." (Docket Entry 14 at 11-12 (citing Meyer-Williams v. Colvin, 87 F. Supp. 3d 769, 772 (M.D.N.C. 2015) (Eagles, J.), and 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6)).) However, Plaintiff then concedes that the incompleteness of an opinion "could be considered under the last factor" in the regulations governing the evaluation of medical opinions. (Id. at 12 (referencing 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (containing catchall provision permitting ALJ to consider any other factors "which tend to support or contradict the opinion"))).)

supporting rationale or objective findings to support his extreme limitations on lifting, carrying, handling, fingering, and reaching. (See Tr. 878-79.) Thus, the ALJ did not err by discounting Dr. Brenner's opinions as conclusory. See Kepke v. Commissioner of Soc. Sec., 636 F. App'x 625, 630 (6th Cir. 2016) (holding that ALJ "properly discounted" treating physician's checklist opinion which "did not provide an explanation for [the physician's] findings"); Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) ("recogniz[ing] that a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration'" (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2009)); Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009) ("[C]hecklist forms . . . which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis." (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993))); Acosta v. Colvin, No. 1:14CV1056, 2016 WL 1229084, at *4 (M.D.N.C. Mar. 28, 2016) (unpublished) (Osteen, C.J.) (finding "the ALJ's decision to afford [the treating physician's] opinion less than controlling weight . . . well-supported" where the opinion "took the form of a checkbox questionnaire without explanation or supporting evidence"); Whitehead v. Astrue, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9

(E.D.N.C. May 24, 2011) (unpublished) (ruling ALJ correctly found that treating physician's check-box form did not merit controlling weight where physician provided no explanation for her findings).

Although Plaintiff concedes that "Dr. Brenner did not provide the reasons for his opinion[s]" on the RFC Questionnaire, Plaintiff nevertheless urges that Dr. Brenner's opinions harmonized "with his treatment notes, which the ALJ [wa]s required to consider." (Docket Entry 14 at 12 (citing 20 C.F.R. 404.1527(c)(4), 416.927(c)(4)).) That argument fails, because the ALJ did consider (and discuss) Dr. Brenner's treatment records, noting that Dr. Brenner found decreased range of motion, tenderness, and swelling in Plaintiff right wrist, but also normal strength, pulses, reflexes, and sensation bilaterally. (See Tr. 30 (citing Tr. 888).) Plaintiff does not explain how those findings supported Dr. Brenner's extreme limitations of no more than 10 pounds of occasional lifting and carrying and fewer than 10 minutes of handling, fingering, and reaching in an eight-hour workday (see Tr. 879). (Docket Entry 14 at 12-13.)

b. Dr. Melton

On March 3, 2016, Dr. Melton completed an RFC Questionnaire (Tr. 968-69), reporting Plaintiff's diagnosis as "unspecified arthropathy" which caused symptoms of joint pain, lower back pain, dry mouth and eyes, and paresthesias (Tr. 968). Dr. Melton indicated that Plaintiff could walk one to two blocks without

resting or significant pain, sit for 60 minutes at a time and for
a total of seven hours, stand and/or walk for 15 minutes at a time
and for a total of one hour, and needed a job which permitted her
to change position from sitting, standing, or walking at will.
(See id.) Further, Dr. Melton opined that Plaintiff could lift and
carry fewer than 10 pounds frequently and up to 20 pounds
occasionally, and could only perform handling and fingering for 10
percent (48 minutes), and reaching for 50 percent, of an 8-hour
workday. (See Tr. 969.) Dr. Melton believed that Plaintiff's
impairments would cause her to miss work three or four times per
month, and that Plaintiff could not work an eight-hour day, five
days per week on a sustained basis. (See id.)

The ALJ discussed the findings in Dr. Melton's treatment notes
(see Tr. 30) and then evaluated her opinions as follows:

> Dr. Melton, a treating physician, opined that [Plaintiff]
> can sit for seven hours and stand or walk up to one hour
> in an eight-hour workday. [Plaintiff] can occasionally
> lift and carry up to 20 pounds. [Plaintiff] would likely
> miss three or four days of work per month. He [sic]
> further opined that [Plaintiff] was not capable of
> working an eight-hour day, five days a week, on a
> sustained basis. While [the ALJ] note[s] that an opinion
> on whether an individual is disabled goes to an issue
> reserved to the Commissioner and therefore cannot be
> given special significance, such opinion should still be
> considered in the assessment of [Plaintiff's] [RFC]. I
> give Dr. Melton's opinions partial weight to the extent
> they are consistent with the overall medical evidence and
> other opinions.

(id. (internal citations omitted)). The ALJ did not commit an
error warranting remand in his evaluation of Dr. Melton's opinions.

26

Plaintiff challenges the ALJ's evaluation of Dr. Melton's opinions on two grounds. (See Docket Entry 14 at 13-14 (citing Tr. 30).) First, Plaintiff faults the ALJ for "not explain[ing] which [of Dr. Melton's] limitations he found consistent with the evidence, nor why he rejected other limitations." (Id. at 13 (citing Tr. 30).) However, comparison of Dr. Melton's opinions with the RFC adopted by the ALJ makes clear which of Dr. Melton's opinions the ALJ credited and which he rejected. (Compare Tr. 27, with Tr. 968-69.)

Second, Plaintiff discusses particular findings from Dr. Melton's treatment notes, and argues that the ALJ erred by "fail[ing] to explain why th[at] evidence d[id] not support Dr. Melton's opined limitations." (Docket Entry 14 at 13 (citing Tr. 935-36, 939, 940, 1029-30).) However, the ALJ did not expressly evaluate the consistency of Dr. Melton's limitations with her own treatment notes but rather discounted Dr. Melton's opinions to the extent they remained inconsistent with other medical evidence of record. (See Tr. 30.) Such a finding suffices to justify the ALJ's discounting of Dr. Melton's opinions. See Craig, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." (emphasis added)).

Moreover, although the ALJ did not detail the evidence that conflicted with Dr. Melton's opinions in the same paragraph in which the ALJ weighed those opinions (see Tr. 30), the ALJ's earlier discussion of the medical evidence permits the Court to meaningfully review his evaluation of Dr. Melton's opinions. See McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis). In his decision, the ALJ specifically discussed normal xrays of Plaintiff's hands, knees, and spine, and treatment records which showed good range of motion, full strength, normal sensation, symmetric reflexes, full pulses, no edema, redness, or warmth, and normal gait and station. (Tr. 28-30 (citing Tr. 728-31, 807-10, 868-69, 884-923, 934-63).) In addition, the ALJ noted Plaintiff's daily activities, including handling personal care, taking care of her children, preparing simple meals, completing light household chores, shopping, reading, watching television, socializing, attending church, and driving, which the ALJ found inconsistent with Plaintiff's allegations of

disability "and further support[ed] the finding that [Plaintiff] can perform a range of light work tasks and activities. (Tr. 28 (citing Tr. 281-88.)[16]

In short, Petitioner has shown no basis for relief arising from the ALJ's decision to discount the opinions of Drs. Brenner and Melton.

### 3. Credibility Evaluation

Finally, Plaintiff asserts that the ALJ's "credibility determination is not supported by substantial evidence." (Docket Entry 14 at 14 (bold font omitted).) More specifically, Plaintiff maintains that "[t]he ALJ failed to apply the proper legal standard by requiring objective evidence of Plaintiff's symptoms," because "Plaintiff's symptoms cannot be rejected solely because they are not substantiated by the objective medical evidence." (Id. at 15 (citing Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("SSR 16-3p"), Stitley v. Colvin, 621 F. App'x 148, 150 (4th Cir. 2015), and Tanner v. Commissioner of Soc. Sec., 602 F. App'x 95, 99 (4th Cir. 2015)).) According to Plaintiff, "[t]he ALJ further erred by claiming that Plaintiff's complaints were not consistent with the preponderance of the opinions and medical

---

[16] With regard to driving in particular, the ALJ "noted that driving an automobile for any distance . . . requires significant physical abilities such as sitting in one place for a period of time, turning the steering wheel, and maneuvering one's body in positions as to see in all directions and angles, while simultaneously operating foot controls." (Tr. 28.)

evidence." (Id. at 16 (referencing Tr. 31).) Those contentions warrant no relief.

SSR 16-3p and the Commissioner's regulations provide a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. §§ 404.1529, 416.929.[17] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

---

[17] Applicable to ALJ decisions on or after March 28, 2016, the Social Security Administration superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with SSR 16-3p. The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case postdates the effective date of SSR 16-3p (see Tr. 33) and, thus, this Recommendation will apply SSR 16-3p to Plaintiff's argument regarding the ALJ's subjective symptom evaluation.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

>     7. Any other factors concerning an individual's
> functional limitations and restrictions due to pain or
> other symptoms.

Id. at *7-8. The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her statements "concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 28.) Plaintiff first faults the ALJ for rejecting Plaintiff's subjective complaints of symptoms "solely because they [we]re not substantiated by the objective medical evidence." (Docket Entry 14 at 15 (emphasis added).) That contention fails because, although the ALJ considered the consistency of Plaintiff's statements with the objective medical evidence (as the Commissioner's policy and regulations permit him to do, see SSR 16-3p, 2017 WL 5180304, at *4 (requiring ALJ to "examine the entire case record, including the objective medical evidence" (emphasis added); see also 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1))), the ALJ did not discount

Plaintiff's subjective complaints <u>solely</u> due to the lack of objective medical evidence to substantiate her allegations.

In making the part two finding, the ALJ observed as follows:

> . . . [Plaintiff's] testimony and allegations [are] only partially supported by the overall medical evidence of record. <u>[Plaintiff] is currently working part time and has continued to work part time for over a year. She continues to be able to perform activities of daily living, continues to drive</u> and recent records note largely normal gait, strength and tone. The vast majority of [Plaintiff's] allegations are subjective and not supported by objective diagnostic testing. [Plaintiff] and [Plaintiff's] representative conceded that the ulcerative colitis was in remission since July 2011 and the records support that admission. . . . Records reflect that [Plaintiff's] anxiety and asthma are controlled with medication and remain stable. . . . Additionally, [Plaintiff] reported . . . that she is <u>able to take care of personal care, take care of her children, prepare simple meals, do light household chores, shop and handle her finances. She also likes to read, watch television and socialize daily. She attends church weekly and doctor's appointments monthly</u>. . . . As it relates to driving, it is noted that <u>driving an automobile for any distance . . . requires significant physical abilities such as sitting in one place for a period of time, turning the steering wheel, and maneuvering one's body in positions as to see in all directions and angles, while simultaneously operating foot controls. Performance of activities such as these tends to erode [Plaintiff's] consistency</u>, as it relates to disabling allegations, and further supports the finding that he [sic] can perform a range of light work tasks and activities.

(Tr. 27-28 (emphasis added).) As the language underscored above makes clear, the ALJ considered Plaintiff's continued part-time work, her engagement in a wide range of daily activities, and her ability to drive, as well as the objective medical evidence, in

finding Plaintiff's statements about her symptoms not entirely consistent with the evidence of record.

Plaintiff next contends that "the ALJ further erred by claiming that Plaintiff's complaints were not consistent with the preponderance of opinions and medical evidence." (Docket Entry 14 at 16 (referencing Tr. 31).) In particular, Plaintiff argues that, of the three medical opinions in her case ("Dr. Brenner's, Dr. Melton's, and the state agency medical consultant's . . . at the reconsideration level"), both "Dr. Brenner's and Dr. Melton's opinions support Plaintiff's claims" (id. (citing Tr. 878-79, 968-69)), and "[t]he treatment notes of both physicians further support [Plaintiff's] claims" (id.). According to Plaintiff, "the preponderance of medical opinions and treatment records actually supports Plaintiff's claims, so the ALJ's second reason for rejecting the degree of [Plaintiff's] allegations is not supported by substantial evidence." (Id.)

Plaintiff's argument glosses over a critical word in the ALJ's statement. The ALJ concluded that "significant weight cannot be given to the third party [function] report [completed by Edward Oakes] because it, like [Plaintiff's] allegations, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Tr. 31 (emphasis added).) The ALJ's use of the conjunctive word "and" means that he found Plaintiff's allegations contrary to the preponderance of opinions

and medical findings taken together. (Id.) As discussed above, the ALJ sufficiently detailed the objective evidence that conflicted with Plaintiff's allegations of disabling symptoms to permit the Court to engage in meaningful judicial review.

Accordingly, the ALJ supported his analysis of Plaintiff's subjective complaints with substantial evidence, and her allegations of error fail as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Final Decision of the Commissioner of Social Security (Docket Entry 13) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 19) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 8, 2018